# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>BROUGHTON CONSTRUCTION CO., LLC,<br><br>Debtor. | Case No. 23-00378-ELG |
| WENDELL W. WEBSTER, chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>R13 COMMUNITY PARTNERS LLC, et al.,<br><br>Defendants. | Adv. No. 25-10053-ELG |

### DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant R13 Community Partners LLC ("R13"), on behalf of itself and BRP Hill East Development LLC, Frontier Development and Hospitality Group LLC, and U Street Parking, Inc. (altogether with R13, the "Defendants"), by counsel, hereby moves to dismiss (this "Motion") all Counts of Plaintiff Wendell W. Webster's (in his capacity as the chapter 7 trustee, the "Trustee") Complaint to Avoid Transfers, To Recover Property, and for Related Relief [Dkt. No. 1] (the "Complaint") pursuant to FRBP 7012 as incorporated by FRCP 12(b)(6), and respectfully states as follows:

**I.     INTRODUCTION**

1. The Trustee admits that the governing document here is a memorandum of understanding (the "MOU").[1] Compl. ¶17 (noting that "[n]o operating agreement was ever executed, and the Memorandum of Understanding for Joint Venture Partnership continues to govern R13.").

2. As a matter of law, an MOU is a non-binding document, especially the MOU here which demonstrates clear intent to be non-binding, so no joint venture was ever formed here.

3. Further, the MOU was signed by only 4 out of the 6 parties. *See.* Comp. Ex. A. As a matter of law, this does not form a binding contract.

4. And, as the Trustee admits, the Debtor was insolvent at the time the MOU was entered into and, as such, the Debtor could never have completed the necessary monetary nor operational requirements to have been provided equity in R13.

5. Since no joint venture was ever formed, by law, the Debtor could not have had a 3% interest in the alleged joint venture.

6. Therefore, the Trustee's claim that the Debtor's withdrawal of that interest and avoidance of the same must fail as a matter of law.

---

[1] Whether intentionally or through clerical error, Exhibit A to the Complaint (the alleged governing document) was not submitted, nor was Exhibit B. Exhibit A is integral to the Complaint, and the Defendants have attached to this Motion the MOU that was submitted to the Trustee in discovery and used by counsel as an exhibit in Trustee's deposition of R13's representative. *See Qi v. F.D.I.C.*, 755 F. Supp.2d 195, 199-200 (D.D.C. 2010) (citing cases that a court may consider documents in a motion to dismiss if integral to the complaint); *see also Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."); *In re Fultz*, 232 B.R. 709 (Bankr. N.D. Ill. 1999) (determining that it could review a settlement agreement attached to a motion for judgment on the pleadings and stating that "it would be wholly illogical if the Court could not consider a document to which the parties repeatedly refer in the pleadings and which is central to both the Plaintiff's claim and the Debtor's defense."). To protect confidential information, the Defendants have attached the MOU as Exhibit A to this Motion. Further, the Defendants have filed the MOU under seal and will file a subsequent motion authorizing such.

**II.   FACTS**

7. Here, the relevant, but glaringly sparse, assertions of fact the Complaint contains are as follows.[2] R13 is a Delaware limited liability company formed on June 21, 2022. Compl. ¶¶ 6, 12. Over a month later, on July 29, 2022, the draft MOU was prepared for six parties, including Broughton Construction Co., LLC ("Broughton" or the "Debtor"), in which the unformalized joint venture parties agreed to negotiate towards the formation of a future partnership.[3] Compl. Ex. A. The purpose of the MOU was to outline the structure of partnership that would, with appropriate funding, pursue the potential development of a real estate project in Washington, D.C. (the "District"), in response to a District Request for Proposal that was submitted by one of the joint venture parties, prior to the date of the MOU. *Id.*

8. On July 29, 2022, only four of those six joint venture parties signed the MOU. Compl. Ex. A. The Complaint then alleges that R13 submitted a bid to develop the District's Hill East Bundle II project (the "Project"), which the District accepted.[4] Comp., ¶ 16. The Complaint also asserts that Broughton was insolvent at all times prior to and during the foregoing events. Comp., ¶¶ 4-10 ("[t]he Debtor was insolvent since December 15, 2019).

---

[2] Unless otherwise asserted, the Defendants are accepting the facts asserted in the Complaint as true solely for the purposes of arguing this Motion. The Defendants believe that the Complaint contains voluminous mischaracterizations and omissions that, if corrected, would be fatal to all Counts.

[3] As noted above, while the Complaint purports that the MOU will be submitted under seal as Exhibit A, as of the date of this filing, no such submission has been made. References to the MOU herein assume that the Trustee will make such submission promptly, along with Exhibit B to the Complaint, which was similarly not attached. In the interim, the Defendants have attached Exhibit A to this Motion.

[4] The Complaint curiously does not allege *when* R13 submitted the RFP nor *when* it was selected by the District. The placement of the allegation regarding R13 being selected as the winning bidder *after* the allegations regarding formation of R13 and execution of the MOU is misleading as it suggests that R13 was first formed through the MOU, then submitted the response to the RFP and was thereafter selected. However, the MOU clearly states that the selection of R13 occurred *prior* to the date of the MOU.

9. The Complaint also provides that Casey Stringer, the sole member of the Debtor, filed for Chapter 7 before this Court on August 28, 2023, and that "as a result. . . his interest in the Debtor became property of his bankruptcy estate." Comp., ¶ 19.

10. Most importantly, the Complaint states that "[n]o operating agreement was ever executed, and the [MOU] **continues to govern R13**." Comp., ¶17 (emphasis added).

11. Accordingly, it is clear that the MOU, which the Court can and should rely upon, forms the basis of Trustee's claims. The MOU explicitly states, as such documents typically do, that the majority of sections are non-binding. Specifically, Section 7 states that:

> **[E]ach party hereto represents and warrants that**, other than Section 5, 7, and 8 of this Memorandum, which are legal, valid and binding, and enforceable in accordance with their respective terms, **this Memorandum is intended to be non-binding and shall not give rise to any right or obligation based on any legal or equitable theory** and only a subsequent, formal, definitive and binding written agreement, satisfactory to each of the Parties in each such Party's sole discretion, and executed and delivered by all Parties, will bind the Parties as to **any matter that is the subject of this Memorandum**.

*See* Comp. Ex. A. (emphasis added). This language makes it clear that the only sections that form any type of binding agreement are 5, 7, and 8 respectively, which pertain to: (i) an agreement to enter into exclusive negotiations, (ii) the invalidity and enforceability of the contract, and (iii) confidentiality. The proposals for the prospective equity distribution in R13 among the parties, which form the basis of the Trustee's claims, are contained Sections 1 and 4(a) of the MOU and are clearly *not* binding based on the language of Section 7 stated above. Compl. Ex. A.

12. The Complaint alleges that on October 3, 2023, Mr. Stringer sent a letter purporting to "withdraw" the Debtor from R13.

13. The Complaint then alleges that the Debtor filed for bankruptcy on December 15, 2023. Compl., ¶ 21. The Court can take judicial notice of how Mr. Stringer signed the Debtor's

-4-

petition initiating this case as Manager of the Debtor.  *See* Dkt. No. 1 at Part 14 and Dkt. No. 2, Statement Regarding Authority to Sign and File Petition ("Corporate Resolutions").

### III.   STANDARD OF REVIEW

14. "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))

15. Generally, when ruling on a motion to dismiss, a judge "accept[s] as true all of the factual allegations contained in the complaint." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, courts do not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).  Further, courts do not "accept as true [a] complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Id*.

16. Courts apply Federal Rule Civil Procedure 8 and, where applicable, Rule 9, when considering whether a complaint adequately states a claim for relief under Rule 12(b)(6). *In re Paul*, Case No. 23-00222-ELG, Adv. Pro. 24-10008-ELG, 2025 WL 217807, at *4 (Bankr. D.D.C. July 31, 2025). Rule 8, made applicable through Bankruptcy Rule 7008, requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id*.

17. Federal Rule Civil Procedure 9, made applicable through Bankruptcy Rule 2009, requires a plaintiff asserting a claim grounded in fraud to meet a "heightened" pleading standard, requiring that a party "state with particularity the circumstance constituting fraud or mistake." *Id*. (quoting Fed. R. Civ. P. 9(b)). Generally, courts apply Rule 8 when adjudicating constructive fraudulent transfers, and Rule 9 when adjudicating actual fraudulent transfers. *See In re Greater Southeast Community Hospital Corp.* 333 B.R. 506, 532 n. 33 (D.D.C. 2005).

## IV. ARGUMENT

### A. All Counts Must Be Dismissed Because the MOU Was a Non-Binding Agreement And Did Not Create Any Equity Interest for the Debtor in R13.

#### i. *The MOU's terms create no equity interest for the Debtor in R13.*

18. "This jurisdiction follows the 'objective' law of contracts, which generally means that 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking . . . ." *Bradgon v. Twenty-Five Twelve Assocs. Ltd., Partnership*, 856 A.2d 1165, 1170 (D.C. 2004) (quoting *DSP Venture Group, Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003). "[A] court must honor the intentions of the parties as reflected in the settled usage of terms they accepted in the contract . . . and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Id*. (internal quotations and citations omitted).

19. If this Court takes the Complaint's assertion that the not-fully-executed MOU acts as R13's "governing document" at face value, then all Counts must fail. The explicit terms of section 7 of the MOU make the entire document (other than sections 5, 7, and 8) non-binding. Section 7 renders all but the foregoing sections, including, critical, sections 1 (Joint Venture Formation and Ownership Interest) and 4(a) (Project Ownership and the **anticipated** ownership

structure), as well as Exhibit A, entirely non-binding. The intention of the parties, as reflected in the unequivocal language used in the MOU, grants to the Debtor no vested interest in R13 whatsoever, and no amount of discovery will change that fact.

20. Not only are the relevant terms of the MOU undisputably non-binding, it is also undisputably prospective in nature; meaning, it did not create a present right to anything, especially an equity interest in R13. In this regard, the language of the MOU speaks for itself. For example, the MOU provides that "[t]he Parties…**will** form a joint venture…. Subject to the terms of Section 5 [Exclusive Negotiations], the JV **will be** owned by the Parties…. The **anticipated** ownership structure for the JV is as set forth on Exhibit A." Compl., Ex. A at ¶¶ 1 and 4(a) (emphasis added). These are all prospective terms.

21. The MOU is clear on its face that it did not create or grant a present interest in R13. Indeed, if it did, it would have clearly stated that the "[p]arties **hereby** form" or "the JV **is** owned by the Parties" or "[t]he ownership of the JV **is** set forth on Exhibit A." The MOU clearly does not provide that.

22. More importantly, the MOU clearly provides that any grant of an equity interest in R13 was, and still is, subject to many conditions precedent and obligations, including, but not limited to, significant equity funding, sharing of expenses and specific operational commitments by each of the parties. *See* MOU ¶¶ 1-4. For the Debtor, that meant contributing equity, its share of the initial funding commitment for expenses, as well as the continuing ability to perform construction management services for the Project. *Id*. Yet, relying on the facts set forth in the Complaint, it is undisputed that the Debtor could not (and did not) provide any of these.[5]

---

[5] It is reasonably safe to assume that this is why Mr. Stringer withdrew the Debtor as member of the as of yet formalized joint venture.

23. As the Complaint clearly states, the Debtor was significantly insolvent as early as December 2019, a full year and half before the MOU was executed. *Id*. ¶¶ 4-10. Taking these allegations as true, the Debtor did not have the ability to become a legitimate member of R13, especially according to the non-binding MOU upon which the Complaint relies. Indeed, the Debtor never had the financial means to participate in the Project nor become a contributing member of R13 as required by the MOU.[6] The Complaint's very own statements of the Debtor's insolvency prove this critical point.

24. It would be beyond reason to suggest that the Debtor's estate can receive the benefits of equity ownership without having provided, or the ability to provide, the corresponding obligations upon which such equity is granted. Indeed, there is no basis for a "something for nothing" proposition, yet, this is exactly what the Complaint presumes to demand.

      *ii.    The MOU, as an only partially executed agreement, could not create any equity interest*

25. The Complaint incorrectly relies on an unexecuted document to try to establish an equity interest in R13. As is clear from the MOU, only four of the six the joint venture parties signed the MOU. In order for any agreement to be valid, there must be (i) agreement as to all material terms, and (ii) intention of the parties to be bound. *See Kramer Associates, Inc. v. Ikam, Ltd.*, 888 A.2d 247, 252 (D.C. 2005) (quoting *Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C. 1985).

26. Here, the Complaint exclusively relies on the MOU to establish that the Debtor possessed equity interest in R13. However, because only four of the six parties signed the MOU,

---

[6] At best, assuming the Debtor was even a member (which it was not) it would have been a "Defaulting Party" under the MOU whose equity interest and rights to distribution would be subject to dilution and setoff when other members had to make up the funding commitments that the Debtor clearly was not capable of providing, and in fact did not provide. To the extent the Court determines that the Debtor has any interest in R13, the R13 reserves all of its rights with respect to dilution of equity and offset of distributions associated therewith.

there is not demonstratable meeting of minds as required by law. Accordingly, all Counts must also fail for this reason.

      **B.    The Trustee Is Equitably Estopped from Claiming Stringer Lacked Authority to Withdraw His Interest (if any) in R13 and, in the alternative, the Proceedings Were Instituted in Violation of the Bankruptcy Code**

27.    As noted above, it is the Defendants' position that the Debtor never had any interest in R13 and relies on the arguments above and the plain language of the MOU in support. Notwithstanding the irrefutable inadequacy of the Complaint's bare assertions, the Defendants are compelled to raise yet another glaring deficiency in the Complaint.

28.    The Complaint asserts that Mr. Stringer lacked authority to withdraw his (nonexistent) equity interest in R13. Compl. ¶25. However, the Complaint provides no legal or factual basis to support this claim. Defendants are left to presume that the Trustee's position is that Mr. Stringer lacked authority to withdraw his "equity" from R13 because that interest was property of his estate and thus subject to the control of Mr. Stringer's Chapter 7 Trustee. In this regard, it is notable that the Trustee in this case is the same Trustee as in Mr. Stringer's. Compl. ¶¶ 19 and 25. If that is the Trustee's position, such position is, on its face, untenable.

29.    Indeed, if it is the Trustee' position that Mr. Stringer lacked authority to withdraw his interest from R13 due to such interest being subject to his pending Chapter 7, then it would logically follow that Mr. Stringer's interest in the Debtor, as its sole member, was equally impaired by his Chapter 7, and thus he lacked authority to initiate the instant proceedings. Mr. Stringer's sole membership interest in the Debtor is clearly stated in the Complaint.[7] Compl. ¶ 19. The Trustee cannot plausibly claim that Mr. Stringer's (non-existent) interest in R13 can be treated differently than is interest in Broughton. Accordingly, it must follow that either Mr. Stringer

---

[7] While his interest in the Debtor is clearly identified, what is notably <u>not</u> identified is his interest in R13. *Id.*

-9-

lacked the authority to both withdraw his interest in R13 and initiate the instant case, or he had the legal authority to do both. The Trustee cannot have it two different ways.

30. Based on the Trustee's prosecution of this case for over 2 years without questioning the validity of its filing (again, despite being the Trustee in Mr. Stringer's Chapter 7 and represented by identical counsel), it appears that the Trustee found that Mr. Stringer had proper authority to initiate the Debtor's case as the Debtor's sole equity member. Accordingly, the Trustee should be barred by equitable estoppel from asserting Mr. Stringer lacked authority to withdraw his (nonexistent) interest from R13.[8] *See In re Hardy*, Case No. 16-00280, 2017 WL 2312852, at *2 (Bankr. D.D.C. May 26, 2017) (applying equitable estoppel to prevent a chapter 7 debtor from asserting contrary positions).

31. Further, even if Mr. Stringer lacked authority to withdraw whatever interest he had in R13 (which was none) because of his personal filing, the Trustee once again ignores the impact of Broughton's Chapter 7 filing. R13 is a Delaware limited liability company. Pursuant to Section 18-304 of the Delaware Limited Liability Company Act (the "Act"), "[a] person ceases to be a member of a limited liability company upon . . . [the] member . . . [filing] a voluntary petition in bankruptcy. 6 Del. C. §18-304(1)(b) (2025).

32. Regardless of whether Mr. Stringer's withdrawal was effective, upon the filing by Broughton of its Chapter 7 petition, Broughton ceased to be a member and all the estate would be entitled to (if Broughton were in fact a member, which it was not), would be the fair value of Broughton's interest in R13 as of December 15, 2023, subject to dilution as provided in the MOU. 6 Del. C. §18-604.

---

[8] To the extent necessary, R13 reserves all of its rights to file a motion to dismiss the Debtor's Chapter 7 for lack of authority.

33. For the foregoing reasons, not only does Count I fail, but all Counts with respect to fraudulent and preferential transfers must also fail as a matter of law as discussed below.

**C.     Since Count I fails, Counts II, III, and V must necessarily fail as well**

34. In addition to the grounds for dismissal outlined above, in order to sustain an avoidance action pursuant to sections 544, 547, or 548 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and subsequently recover the avoided property pursuant to section 550 of the same, the Trustee needs to make the threshold showing that the Debtor transferred an interest in property.  *See* 11 U.S.C. § 547(b); 11 U.S.C. § 548, 11 U.S.C. § 544(b); *see also In re Molina*, 657 B.R. 172, 190 (Bankr. E.D. N.Y. 2023); *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Freuhauf Trailer Corp. Retirement Plan No 003 (In re Freuhauf Trailer Corp.)*, 444 F.3d 203, 211 (3d Cir. 2006) (quoting *Mellong Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.)*, 92 F.3d 139, 144 (3d Cir. 1996)).

35. Counts II, III, and V[9] all seek to avoid, through various avenues, the Debtor's transfer of an interest in R13.  As established above, the Complaint fails to adequately plead that the MOU created <u>any</u> equity interest in R13.  Because the Debtor never had an interest in R13, there could be no transfer.  Accordingly, the Complaint cannot carry its burden to show that there was a transfer pursuant to sections 544, 547, and 548 or D.C. Code §§ 28-3104 and 28-3105.[10]  Without a transfer to avoid, there is no property to recover pursuant to section 550.  Therefore, since the Complaint fails to adequately plead Count I, all remaining Counts must fail.

**D.     Counts II and III Fail Because the Complaint Does Not Allege Lack of Reasonably Equivalent Value and the Facts Are Not Adequately Plead**

    *i.  The Complaint does not adequately allege lack of reasonably equivalent value*

---

[9] The Complaint skips Count IV, and therefore, Count IV fails for lack of existence.
[10] Defendant's do not concede DC laws on fraudulent transfer apply.

-11-

36. Along with the burden of establishing a transfer of an interest in property (which the Trustee has failed to do), the Trustee also has the initial burden of showing that the debtor received "less than reasonably equivalent value in exchange" for the transfer. *In re Cambridge Capital Group, Inc.*, Case No. 03-01178, Adv. No. 06-10011 (Bankr. D.C. Nov. 16, 2009) (citing *Dicello v. Jenkins*, 160 B.R. 1, 10 (Bankr. D.C. 1993)). The Complaint does not (and could not) state any facts which, if taken as true, show that Broughton received less than reasonably equivalent value for its withdrawal of its purported equity interest.[11] Instead, the Complaint states that the estate did not receive value in conclusory fashion only. Such conclusive legal assertions disguised as facts do not satisfy the *Twombly* and *Iqbal* standards.

37. Any suggestion of value is the scant allegation that the Debtor "paid funds for its interest in R13 and paid certain expenses of R13 in responding to the proposal." Comp. ¶ 15. It is telling that the Trustee fails to allege the amount of funds the Debtor actually paid to R13 for its alleged "equity interest" or such expenses, although Movant suspects that the Trustee is fully aware of the extremely *de minimus* amount actually paid why it was paid (not equity).

38. This Complaint was filed a full year after the petition date, four (4) months after the Trustee obtained a 2004 Order [Dkt. No. 40], issuance of discovery request, and after deposing a representative of R13. Accordingly, the Trustee has had ample opportunity to diligence this matter and to allege actual facts, including, but not limited to, the precise value, if any, the Debtor contributed to R13 and when it was contributed, to properly substantiate the claims in the Complaint. Despite having a full year to examine the Debtor's books and records, receive a

---

[11] The Complaint conveniently leaves out relevant facts outside the scope of a motion to dismiss. One such fact is that R13 has not moved past the discussions stage regarding the Hill East project, and has spent over $600,000 in expenses attempting to get the project off the ground. Another fact is that, if Broughton actually received a 3% equity interest, and the MOU acted as a binding document (which it is not), then Broughton would be in violation of the MOU by virtue of lack of payment as well as being unable to carry out its duties as outlined in section 1.

document production and take a deposition, all the Trustee can allege is the bare minimum (if not well below the minimum). Indeed, all that has been alleged is that the "Debtor paid funds for its interest in R13." Yet, as noted, the Trustee has already conducted discovery and is still unable to allege what and when the Debtor allegedly paid for this interest. The Trustee's allegation regarding paid expenses are equally deficient. Why? If the Trustee wanted the funds for expenses back, it would have been far better for the estate to simply make that request rather than incur a cost that significantly exceeded such amount by pursuing this Complaint.

### ii. *The Complaint does not adequately allege actual fraud*

39. As stated above, Rule 9(b) of the Federal Rules of Civil Procedures provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As explained by this Circuit:

> Rule 9(b)'s particularity requirements serves several purposes. It "discourage[s] the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude . . . . And because 'fraud' encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response.

*United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)).

40. Here, allegations of actual fraud not only fall short of Rule 9(b)'s heightened pleading requirement, but they fail to plead fraud altogether. To establish actual fraud, all the Complaint contains are the bare statements: "[t]he Withdrawal was made with intent to hinder, delay and/or defraud creditors." Compl. ¶¶31 and 41. This is precisely the "legal conclusions cast in the form of factual allegations" rejected by this Court. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). Accordingly, Count II and III fail to meet the pleading standards of Rules 12 and 9.

41. Similarly, the Complaint only alleges that Broughton was insolvent at the time of the purported transfer and asserts that the company did not receive reasonably equivalent value. Neither of these allegations identify fraudulent conduct or a fraudulent scheme. Accordingly, the Complaints failure to adequately plead lack of reasonably equivalent value, Counts II and III must fail.

### E. Count V Fails because the Trustee Failed to Allege the Transfer Was on Account of an Antecedent Debt, Failed to Allege that R13 received sufficient value, and Failed to Fulfill His Duty to Investigate

*i. The trustee failed to allege the transfer was on account of an antecedent debt or that R13 received any value from the exchange*

42. Section 547(b)(5) requires, among other things, that a transfer enables a creditor to "receive more than such a creditor would receive if—(A) the case were a case under chapter 7 of this title; [and] (B) the transfer had not been made." 11 U.S.C. § 547(b)(5). Further, section 547(b)(2) requires that the transfer be "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). An antecedent debt simply means a debt incurred before the transfer. *See Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 316 (5th Cir. 1996); *In re Tanner Family, LLC*, 556 F.3d 1194, 1196 (11th Cir. 2009).

43. The Complaint does not even get over the first hurdle of asserting a preference. First, the Complaint does not allege that R13 is a creditor of Broughton; because it isn't, and there is not a single allegation in the Complaint (or the Debtor's petition) that suggests otherwise. Indeed, the Complaint does not (and could not) do anything other than state, in conclusory fashion, that Broughton made its alleged "transfer" on behalf of an antecedent debt, but does not suggest that there was an antecedent in the first place. As noted above, any obligations owing to R13 under the MOU are non-binding.

44. Likewise, the Complaint does not attempt to establish that R13 received more from the transfer than it would in a chapter 7 liquidation or that it is better off because of the transfer. In fact, the Complaint did not (and cannot) place any value on the alleged transfer at all, meaning it did not establish that the transfer was worth any value to R13 or benefitted R13 in any way.[12] Indeed, R13 was not legally entitled to anything from Broughton and received nothing in exchange. Simple statutory resuscitations that fail the pleadings standard does not change that. With nothing more than these conclusory legal arguments asserted as fact, Count V must fail.

### F.  *The Complaint Should be Dismissed with Prejudice.*

45. "[S]ection 547(b) . . . requires that the trustee . . . exercise 'reasonable due diligence in the circumstances of the case and tak[e] into account a party's known or reasonably knowable affirmative defense' before commencing an avoidance action under section 547."). *In re HH Technology Corp.*, 146 F.4th 34, 46 (1st Cir. 2025). Section 547(b) potentially created a new diligence element for preferential transfer that the trustee must prove to sustain the action. *Id*. Here, the Complaint demonstrates an astonishing lack of detail and understanding of the circumstances of the case and R13's potential affirmative defenses, despite having conducted discovery well prior to initiating the proceeding. As noted above, notwithstanding such discovery, the Complaint remains shockingly deficient.

46. The Complaint's reliance on bare generic allegations creates the impression that the Trustee conducted no diligence at all. However, this is not the case, as the Trustee had sufficient opportunity to fully assert a factual basis to sustain its claims, yet the Complaint contains no such facts and no amount of further discovery will changes this. For this reason, the Court should avoid

---

[12] Since certain Defendants continue to spend money to pursue the Project, a colorable argument could be made that the withdrawal of equity interest, if it actually existed, **deprived** R13 of value and put the joint venture parties in a worse position because they now need to should a greater share of the expenses. *Supra*, n.9.

allowing the Trustee amend the Complaint or proceed with this case on the premise that further facts will be developed through discovery that could then be proven at trial. Here, discovery has been taken and all that came from it were generic and unsustainable allegations. For these reasons, dismissal with prejudice is appropriate.

**V.    CONCLUSION**

47. As stated above, the Trustee's claim to an equity ownership interest in R13 rests entirely on a document that was curiously not attached to the Complaint, but is referenced therein. It is abundantly clear based on the MOU that the Trustee cannot, in good faith, sustain the claims asserted in the Complaint. It is undisputed that, as admitted in the Complaint, the only governing document between the parties is entirely non-binding, with limited and irrelevant exceptions. Accordingly, the Complaint's request for relief is based purely on a document that did not provide the Debtor anything, moreover an equity interest, in an entity it was not capable of participating in because, as admitted in the Complaint, the Debtor was insolvent years before the creation of the of such entity.

48. Accordingly, this Court should dismiss all Counts of this Complaint with prejudice because: (i) the Trustee failed and cannot otherwise establish that the Debtor had a contractual equity interest in R13 under the MOU as required to adequately plead Count I; (ii) without an interest in property, the Trustee cannot sustain the remaining Counts to avoid and clawback such property; (iii) the Trustee failed to adequately plead reasonably equivalent value and actual fraud in Counts II and III; and (iv) the Trustee failed to adequately plead the existence of an antecedent debt or that R13 received value in Count V.

Dated: March 2, 2026

                                                                  Respectfully submitted,

*/s/ Christopher J. Giaimo*
**SQUIRE PATTON BOGGS (US) LLP**
Christopher J. Giaimo (Bar # 458974)
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6461
christopher.giaimo@squirepb.com

*Counsel for R13 Community Partners, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2026, copies of **DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT** were filed electronically and are available by operation of the Court's electronic filing system.

*/s/ Christopher J. Giaimo*
Christopher J. Giaimo